1
2
3
4

HANSON BRIDGETT LLP
MILES C. HOLDEN, SBN 263342
mholden@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California  94105
Telephone:   (415) 777-3200
Facsimile:    (415) 541-9366

5
6

Attorneys for Plaintiffs ADAMS GROUP,
INC. and ADAMS GRAIN CO.

7

# UNITED STATES DISTRICT COURT

8

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

9

10
11
12
13
14
15
16
17
18
19
20
21

| | |
|---|---|
| ADAMS GROUP, INC. and ADAMS GRAIN CO.,<br><br>          Plaintiffs,<br><br>     v.<br><br>NORTHERN INSURANCE COMPANY OF NEW YORK and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>          Defendants. | CASE NO.<br><br>**COMPLAINT OF ADAMS GROUP, INC. AND ADAMS GRAIN CO. AGAINST NORTHERN INSURANCE COMPANY OF NEW YORK AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA FOR:**<br>**(1) DECLARATORY RELIEF – DUTY TO DEFEND;**<br>**(2) DECLARATORY RELIEF – DUTY TO INDEMNIFY;**<br>**(3) BREACH OF CONTRACT;**<br>**(4) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND**<br>**(5) UNFAIR BUSINESS PRACTICES (VIOLATION OF CALIFORNIA BUS. & PROF. CODE § 17200, ET SEQ.)**<br><br>**DEMAND FOR JURY TRIAL** |

22
23
24
25
26
27
28

12451083.1

## COMPLAINT

Plaintiffs ADAMS GROUP, INC. ("ADAMS GROUP") and ADAMS GRAIN CO. ("ADAMS GRAIN") (collectively, "ADAMS") hereby complain against Defendants NORTHERN INSURANCE COMPANY OF NEW YORK ("NORTHERN") and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA ("NATIONAL UNION") (collectively, "INSURERS") and allege as follows:

### THE PARTIES

1. ADAMS GROUP is and was at all relevant times a corporation duly organized under the laws of California with its principal place of business in Colusa County, California and at all relevant times was and is authorized to transact business in California.

2. ADAMS GRAIN is and was at all relevant times a corporation duly organized under the laws of California with its principal place of business in Colusa County, California and at all relevant times was and is authorized to transact business in California.  ADAMS GRAIN is and was at all relevant times a wholly owned subsidiary of ADAMS GROUP.

3. ADAMS alleges on information and belief that NORTHERN is and was at all relevant times an insurer domiciled in New York with its principal place of business in Illinois, and that NORTHERN is and was at all relevant times authorized to transact business in California as an insurer.

4. ADAMS alleges on information and belief that NATIONAL UNION is and was at all relevant times an insurer domiciled in Pennsylvania with its principal place of business in New York, and that NATIONAL UNION is and was at all relevant times authorized to transact business in California as an insurer.

### JURISDICTION

5. This Court has jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy

12451083.1

1   exceeds $75,000, exclusive of interest and costs.

2       6.    The amount in controversy includes, but is not limited to, the sums that

3   ADAMS contends the INSURERS owe in connection with ADAMS's defense

4   and/or indemnity in connection with an underlying litigation.

5   **VENUE**

6       7.    Venue is proper in this District under 28 U.S.C. § 1391 and in this

7   Division under Local Rule 120(d) because a substantial part of the alleged events

8   and/or omissions giving right to the claims occurred here, including but not limited

9   to the insurance policies at issue being entered into, negotiated, paid for, and/or

10   delivered in this District and Division, the underlying litigation being venued in this

11   District and Division in California Superior Court, Yolo County, and the

12   INSURERS breaching their obligations owed in this District and Division.

13   **GENERAL ALLEGATIONS**

14   **I.**    **NATURE OF THE CLAIM AND RELIEF SOUGHT**

15       8.    This Complaint concerns insurance-coverage issues between ADAMS

16   and the INSURERS arising out of claims concerning alleged bodily injury to Hector

17   Sanchez ("Sanchez") asserted in the litigation styled *Hector Sanchez v. Adams*

18   *Grain Co.; Adams Group, Inc.; and Does 1-50*; California Superior Court, Yolo

19   County; Case No. PO14-446 ("Underlying Litigation").  True and correct copies of

20   the original complaint and the first amended complaint ("FAC") in the Underlying

21   Litigation are attached hereto as **Exhibit A** and **Exhibit B**, respectively, the

22   contents of which ADAMS incorporates herein purely for reference and not for the

23   purposes of admitting or denying any allegations contained therein.

24       9.    In the Underlying Litigation, Sanchez is claiming significant damages

25   and trial is set for later this year.

26       10.    After being notified of the Underlying Litigation, ADAMS tendered to

27   the INSURERS notice of the Underlying Litigation and claims for all available

28   insurance coverage.

12451083.1

COMPLAINT OF ADAMS GROUP, INC. AND ADAMS GRAIN CO. AGAINST
NORTHERN INS. CO. OF N.Y. AND NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA

11. Thereafter, in connection with its claims for insurance coverage, ADAMS provided the INSURERS with additional information about the Underlying Litigation.

12. The INSURERS have failed to comply with their obligations to ADAMS in connection with the Underlying Litigation.

13. ADAMS now seeks declarations of rights, obligations, duties, and liability under the insurance policies issued by the INSURERS.

14. ADAMS also seeks damages, fees, and costs against the INSURERS for breaching the policies and the implied covenant of good faith and fair dealing by unreasonably failing to comply with their obligations to ADAMS in connection with, among other things, the INSURERS' failure or refusal to defend ADAMS in the Underlying Litigation at all or without seeking payment for defense expenses from ADAMS and their failure or refusal to engage in settlement negotiations, all of which are contrary to established insurance law, so as to deny ADAMS the coverage to which it is entitled.

15. ADAMS further seeks relief under California Business and Professions Code § 17200, et seq.

## II.   THE UNDERLYING LITIGATION

16. Sanchez filed the original complaint in the Underlying Litigation against ADAMS on or about March 14, 2014.  Sanchez filed the FAC on or about January 27, 2015.  Both pleadings allege various claims related to alleged bodily injury.

17. For example, Sanchez alleges in the FAC:

On March 20, 2012, Plaintiff was an employee of T & T Marketing Services, Inc., which was providing labor services to Defendant ADAMS GRAIN CO.

On March 20, 2012, Plaintiff while working in a grain silo owned and operated by Defendant ADAMS GRAIN CO., located at 3757 County Road 99, Dunnigan, California, became entrapped and engulfed by grain.  Bill Kelly, the facility manager at this location, was employed by Defendant ADAMS GROUP, INC.

12451083.1

On the date of the incident, Plaintiff was instructed to enter the grain silo and help empty grain from the silo, using large paddles and a mechanical auger to push the grain towards an opening in the bottom of the silo.  Plaintiff was inside the silo, standing on top of the grain, when, without any warning, the floor hatch was opened and a conveyor belt used to transport the falling grain was turned on.  As a result, Plaintiff sank, became engulfed by the grain, and was crushed by the weight of the grain, with his legs and torso pinned against the auger and auger motor. . . .

\* \* \* \* \*

Plaintiff suffered harm to his body and mind, including but not limited to: his arms, legs, lower extremities, neck, head, shoulders, back, abdomen, torso, vision, and respiratory system.  Following the injury, Plaintiff was unable to walk for two (2) months. . . .

(Exhibit B (the FAC), ¶¶ 13-15, 27.)

## III.   THE INSURANCE POLICIES

### A.   THE NORTHERN POLICY

18.   As relevant to this Complaint, NORTHERN issued Precision Portfolio Policy No. PAS 01643362, effective May 2, 2011 to May 2, 2012 ("Northern Policy"), which included commercial general liability insurance coverage and commercial umbrella insurance coverage, to T&T Marketing Services, Inc.  A true and correct copy of the Northern Policy (with premium information redacted) is attached hereto as **Exhibit C**, the contents of which ADAMS incorporates herein by reference.

19.   The Northern Policy contains an insuring agreement that provides in part:

1.   Insuring Agreement

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

b.   This insurance applies to "bodily injury" and "property damage" only if:

(1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

12451083.1

        (2)    The "bodily injury" or "property damage" occurs during the policy period.

     c.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

20.    The Northern Policy defines some of the terms that appear in quotation marks in the insuring agreement as follows:

- "Bodily injury" means "bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease."

- "Coverage territory" means (in part) "a. The United States of America (including its territories and possessions), Puerto Rico and Canada . . . ."

- "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

- "Suit" means (in part) "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged. . . ."

21.    The Northern Policy provides (in part) as follows in the Supplemental Declarations:

| COVERAGE PART(S) AND FORM OR ENDORSEMENT NUMBER | FORM OR ENDORSEMENT NAME AND FORM OR ENDORSEMENT SUPPLEMENTAL INFORMATION |
|---|---|
| LIABILITY<br><br>CG2010    0704 | ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS-SCHEDULED PERSON OR ORGANIZATION<br>WOODLAND AREA<br>NAME 1    ADAMS GROUP, ETAL [sic]<br>NAME 2<br>ADDRESS 1  P. O. BOX 8612<br>ADDRESS 2<br>CITY WOODLAND  STATE CA ZIP 95776-8612<br><br>LOCATION(S) OF COVERED OPERATIONS TBD |

12451083.1

22.     ADAMS timely tendered notice of and claims for coverage for the Underlying Litigation to NORTHERN, and has satisfied all terms and conditions of the Northern Policy that apply to it, except to the extent that NORTHERN prevented ADAMS from performing and/or ADAMS was excused from performing.

**B.     THE NATIONAL UNION POLICY**

23.     As relevant to this Complaint, NATIONAL UNION issued Commercial General Liability Policy No. GL 348-17-58, effective April 1, 2011 to April 1, 2012 ("National Union Policy"), to ADAMS GROUP.  A true and correct copy of the National Union Policy (with premium information redacted) is attached hereto as **Exhibit D**, the contents of which ADAMS incorporates herein by reference.

24.     The National Union Policy contains an insuring agreement that provides in part:

> 1.   Insuring Agreement
>
>> a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .
>>
>> b.   This insurance applies to "bodily injury" and "property damage" only if:
>>
>>> (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>>>
>>> (2)   The "bodily injury" or "property damage" occurs during the policy period; . . . .
>>
>> c.   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury". . . .

25.     The National Union Policy defines some of the terms that appear in quotation marks in the insuring agreement as follows:

•     "Bodily injury" means "bodily injury, sickness or disease sustained by

12451083.1

a person, including death resulting from any of these at any time."

- "Coverage territory" means (in part) "a. The United States of America (including its territories and possessions), Puerto Rico and Canada . . . ."

- "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

- "Suit" means (in part) "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged. . . ."

26.     The National Union Policy lists "ADAMS GROUP, INC." as the named insured in the Declarations.

27.     The National Union Policy provides (in part) as follows in the Broad Form Named Insured Endorsement:

Policy Declarations, "Named Insured" is revised to include:

"Named Insured" means the person or organization first named as the Named Insured on the Declarations Page of this policy (the "First Named Insured"). Named Insured also includes (1) any other person or organization named as a Named Insured on the Declarations Page; (2) any subsidiary, associated, affiliated, allied or acquired company or corporation (including subsidiaries thereof) of which any insured named as the Named Insured on the Declarations Page has more than 50% ownership interest in or exercises management or financial control over at the inception date of this policy, provided such subsidiary, associated, affiliated, allied or acquired company or corporation and their operations have been declared to us prior to the inception date of this policy.

28.     ADAMS timely tendered notice of and claims for coverage for the Underlying Litigation to NATIONAL UNION, and has satisfied all terms and conditions of the National Union Policy that apply to it, except to the extent that NATIONAL UNION prevented ADAMS from performing and/or ADAMS was excused from performing.

## IV.     THE INSURERS' WRONGFUL HANDLING OF ADAMS'S CLAIMS

### A.     NORTHERN'S WRONGFUL CLAIMS-HANDLING

29.     In connection with the Underlying Litigation, NORTHERN, by and through counsel, sent a letter to ADAMS on or about July 15, 2015 ("Denial

Letter"), advising that "it appears that Adams Grain and the Adams Group do not qualify as insureds under the [Northern] Policy.  As a result, there is no defense or indemnity coverage for Adams Grain and the Adams Group under the [Northern] Policy for the Action."

30.     On or about April 19, 2016, ADAMS, by and through counsel, sent a letter to the counsel who had written the Denial Letter requesting that NORTHERN change its coverage position, defend ADAMS in the Underlying Litigation, and effectuate a settlement of the Underlying Litigation on behalf of ADAMS.

31.     Despite sending subsequent correspondence by and through counsel to the counsel who had written the Denial Letter, as of the finalization of this Complaint, ADAMS is unaware of NORTHERN changing its coverage position set forth in the Denial Letter or making any efforts to effectuate a settlement of the Underlying Litigation.

32.     By improperly failing or refusing to defend ADAMS in the Underlying Litigation, and by improperly failing or refusing to attempt to settle the Underlying Litigation by making and/or accepting reasonable settlement offers, NORTHERN has caused ADAMS to be unreasonably exposed to liability in connection with the Underlying Litigation.  NORTHERN has failed or refused to engage in efforts to negotiate and/or effectuate a settlement of the Underlying Litigation.  NORTHERN has not attempted in good faith to effectuate a prompt, fair, and equitable settlement of the Underlying Litigation.  Indeed, NORTHERN has engaged in conduct that has foreclosed the possibility of settlement and/or prevented and/or obstructed settlement opportunities from arising by, among other things, failing or refusing to offer any funds toward settlement or even arrange for settlement discussions.

33.     Additionally, NORTHERN has deceived ADAMS, caused ADAMS to suffer resultant economic injury, and otherwise breached its obligations to ADAMS by, among other things, knowingly: misrepresenting to ADAMS pertinent facts or insurance policy provisions relating to coverages at issue; failing to acknowledge

12451083.1

1  and act reasonably promptly upon communications with respect to claims arising

2  under the Northern Policy; failing to adopt and implement reasonable standards for

3  the prompt investigation and processing of claims arising under the Northern Policy

4  and other insurance policies; and failing to provide promptly a reasonable

5  explanation of the basis relied on in the Northern Policy, in relation to the facts or

6  applicable law, for its failure or refusal to provide any defense or settlement

7  authority or offer any funds toward settlement or even arrange for settlement

8  discussions.

9      34.    NORTHERN's improper claims-handling is in material breach of the

10 Northern Policy and the implied covenant of good faith and fair dealing, and in

11 violation of California's unfair business practices law.

12     **B.    NATIONAL UNION'S WRONGFUL CLAIMS-HANDLING**

13     35.    In connection with the Underlying Litigation, NATIONAL UNION

14 assigned defense counsel to defend ADAMS ("Defense Counsel").

15     36.    Despite assigning Defense Counsel, NATIONAL UNION regularly

16 invoiced ADAMS for defense expenses, taking the position that ADAMS must pay

17 NATIONAL UNION for various defense expenses.

18     37.    In or about early 2016, NATIONAL UNION asserted that ADAMS

19 was responsible for payment of all defense expenses incurred in connection with the

20 Underlying Litigation.

21     38.    In or about late 2015, NATIONAL UNION participated in a mediation

22 of the Underlying Litigation, but after that mediation did not result in a settlement of

23 the Underlying Litigation, NATIONAL UNION has failed or refused to participate

24 in further settlement discussions despite requests from Defense Counsel that

25 NATIONAL UNION do so.

26     39.    On or about April 19, 2016, ADAMS, by and through counsel, sent a

27 letter to counsel for NATIONAL UNION requesting that NATIONAL UNION

28 change its coverage position regarding the payment of defense expenses and

12451083.1

COMPLAINT OF ADAMS GROUP, INC. AND ADAMS GRAIN CO. AGAINST
NORTHERN INS. CO. OF N.Y. AND NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA

1    effectuate a settlement of the Underlying Litigation on behalf of ADAMS.

2         40.    Despite sending subsequent correspondence by and through counsel to

3    the counsel for NATIONAL UNION, as of the finalization of this Complaint,

4    ADAMS is unaware of NATIONAL UNION changing its coverage position

5    regarding the payment of defense expenses or making any efforts to effectuate a

6    settlement of the Underlying Litigation.

7         41.    By improperly asserting that ADAMS is obligated to pay all defense

8    expenses incurred in connection with the Underlying Litigation, and by improperly

9    failing or refusing since the 2015 mediation to attempt to settle the Underlying

10   Litigation by making and/or accepting reasonable settlement offers, NATIONAL

11   UNION has caused ADAMS to be unreasonably exposed to liability in connection

12   with the Underlying Litigation.  Since the 2015 mediation, NATIONAL UNION has

13   failed or refused to engage in efforts to negotiate and/or effectuate a settlement.

14   Since the 2015 mediation, NATIONAL UNION has not attempted in good faith to

15   effectuate a prompt, fair, and equitable settlement of the Underlying Litigation.

16   Indeed, since the 2015 mediation, NATIONAL UNION has engaged in conduct that

17   has foreclosed the possibility of settlement and/or prevented and/or obstructed

18   settlement opportunities from arising by, among other things, ignoring or declining

19   Defense Counsel's request for settlement authority and failing or refusing to offer

20   further funds toward settlement or engage in further settlement discussions.

21        42.    Additionally, NATIONAL UNION has deceived ADAMS, caused

22   ADAMS to suffer resultant economic injury, and otherwise breached its obligations

23   to ADAMS by, among other things, knowingly: misrepresenting to ADAMS

24   pertinent facts or insurance policy provisions relating to coverages at issue; failing

25   to acknowledge and act reasonably promptly upon communications with respect to

26   claims arising under the National Union Policy; failing to adopt and implement

27   reasonable standards for the prompt investigation and processing of claims arising

28   under the National Union Policy and other insurance policies; and failing to provide

12451083.1

1  promptly a reasonable explanation of the basis relied on in the National Union

2  Policy, in relation to the facts or applicable law, for its position that ADAMS is

3  obligated to pay for the defense expenses incurred in connection with the

4  Underlying Litigation and NATIONAL UNION's failure or refusal since the 2015

5  mediation to provide settlement authority or offer funds toward settlement .

6      43.    NATIONAL UNION's improper claims-handling is in material breach

7  of the National Union Policy and the implied covenant of good faith and fair

8  dealing, and in violation of California's unfair business practices law.

9  **<u>FIRST CAUSE OF ACTION</u>**

10  **<u>DECLARATORY RELIEF – DUTY TO DEFEND</u>**
**(AGAINST NORTHERN)**

11

12      44.    ADAMS realleges and incorporates by reference each and every

13  allegation set forth above in this Complaint.

14      45.    A dispute and actual, justiciable controversy has arisen and now exists

15  between ADAMS and NORTHERN concerning their respective rights, obligations,

16  duties, and liabilities under the Northern Policy in connection with the Underlying

17  Litigation.  ADAMS asserts, and states on information and belief that NORTHERN

18  disputes, among other things, that, under the Northern Policy, NORTHERN was and

19  is obligated to comply with NORTHERN's duty to defend ADAMS in the

20  Underlying Litigation.

21      46.    ADAMS desires a judicial determination and declaration of the parties'

22  respective rights, obligation, duties, and liabilities under the Northern Policy in

23  connection with the Underlying Litigation.

24      47.    Declaratory relief is appropriate and necessary at this time so that the

25  parties may ascertain their respective rights, obligations, duties, and liabilities under

26  the Northern Policy in connection with the Underlying Litigation.

27  //

28  //

12451083.1

- 11 -
COMPLAINT OF ADAMS GROUP, INC. AND ADAMS GRAIN CO. AGAINST
NORTHERN INS. CO. OF N.Y. AND NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA

## SECOND CAUSE OF ACTION

### DECLARATORY RELIEF – DUTY TO DEFEND
### (AGAINST NATIONAL UNION)

48.    ADAMS realleges and incorporates by reference each and every allegation set forth above in this Complaint.

49.    A dispute and actual, justiciable controversy has arisen and now exists between ADAMS and NATIONAL UNION concerning their respective rights, obligations, duties, and liabilities under the National Union Policy in connection with the Underlying Litigation.  ADAMS asserts, and states on information and belief that NATIONAL UNION disputes, among other things, that, under the National Union Policy, NATIONAL UNION was and is obligated to comply with NATIONAL UNION's duty to defend ADAMS in the Underlying Litigation by paying for defense expenses and not seeking payment for defense expenses from ADAMS.

50.    ADAMS desires a judicial determination and declaration of the parties' respective rights, obligation, duties, and liabilities under the National Union Policy in connection with the Underlying Litigation.

51.    Declaratory relief is appropriate and necessary at this time so that the parties may ascertain their respective rights, obligations, duties, and liabilities under the National Union Policy in connection with the Underlying Litigation.

## THIRD CAUSE OF ACTION

### DECLARATORY RELIEF – DUTY TO INDEMNIFY
### (AGAINST NORTHERN)

52.    ADAMS realleges and incorporates by reference each and every allegation set forth above in this Complaint.

53.    A dispute and actual, justiciable controversy has arisen and now exists between ADAMS and NORTHERN concerning their respective rights, obligations, duties, and liabilities under the Northern Policy in connection with the Underlying

12451083.1

Litigation.  ADAMS asserts, and states on information and belief that NORTHERN disputes, among other things, that under the Northern Policy, NORTHERN is obligated to indemnify ADAMS in connection with the Underlying Litigation.

54.     ADAMS desires a judicial determination and declaration of the parties' respective rights, obligation, duties, and liabilities under the Northern Policy in connection with the Underlying Litigation.

55.     Declaratory relief is appropriate and necessary at this time so that the parties may ascertain their respective rights, obligations, duties, and liabilities under the Northern Policy in connection with the Underlying Litigation.

## FOURTH CAUSE OF ACTION

### DECLARATORY RELIEF – DUTY TO INDEMNIFY
### (AGAINST NATIONAL UNION)

56.     ADAMS realleges and incorporates by reference each and every allegation set forth above in this Complaint.

57.     A dispute and actual, justiciable controversy has arisen and now exists between ADAMS and NATIONAL UNION concerning their respective rights, obligations, duties, and liabilities under the National Union Policy in connection with the Underlying Litigation.  ADAMS asserts, and states on information and belief that NATIONAL UNION disputes, among other things, that under the National Union Policy, NATIONAL UNION is obligated to indemnify ADAMS in connection with the Underlying Litigation.

58.     ADAMS desires a judicial determination and declaration of the parties' respective rights, obligation, duties, and liabilities under the National Union Policy in connection with the Underlying Litigation.

59.     Declaratory relief is appropriate and necessary at this time so that the parties may ascertain their respective rights, obligations, duties, and liabilities under the National Union Policy in connection with the Underlying Litigation.

//

## FIFTH CAUSE OF ACTION

### BREACH OF CONTRACT (AGAINST NORTHERN)

60.     ADAMS realleges and incorporates by reference each and every allegation set forth above in this Complaint.

61.     The Northern Policy is a valid and enforceable written contract that affords ADAMS insurance coverage for the Underlying Litigation.

62.     ADAMS has made written demands that NORTHERN acknowledge and comply with its obligations to provide coverage under the Northern Policy in connection with the Underlying Litigation, and that NORTHERN defend and indemnify ADAMS in connection with the Underlying Litigation.

63.     ADAMS has satisfied all terms and conditions of the Northern Policy that apply to it, except to the extent NORTHERN prevented ADAMS from performing under the Northern Policy and/or ADAMS was excused from performing under the Northern Policy.

64.     NORTHERN has breached the Northern Policy by, among other things, wrongfully:

      a.     Failing or refusing to defend ADAMS in the Underlying Litigation;

      b.     Failing or refusing to attempt to settle the Underlying Litigation by making and/or accepting reasonable settlement offers;

      c.     Foreclosing the possibility of settlement and/or preventing settlement opportunities from arising;

      d.     Denying ADAMS the right to benefits to which ADAMS is entitled under the Northern Policy; and

      e.     Taking coverage positions contrary to controlling law.

65.     By breaching the Northern Policy, NORTHERN waived its rights under the Northern Policy.

66.     As a direct and proximate result of NORTHERN's breaches, ADAMS

12451083.1

has been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

## BREACH OF CONTRACT (AGAINST NATIONAL UNION)

67.     ADAMS realleges and incorporates by reference each and every allegation set forth above in this Complaint.

68.     The National Union Policy is a valid and enforceable written contract that affords ADAMS insurance coverage for the Underlying Litigation.

69.     ADAMS has made written demands that NATIONAL UNION acknowledge and comply with its obligations to provide coverage under the National Union Policy in connection with the Underlying Litigation, and that NATIONAL UNION defend and indemnify ADAMS in connection with the Underlying Litigation.

70.     ADAMS has satisfied all terms and conditions of the National Union Policy that apply to it, except to the extent NATIONAL UNION prevented ADAMS from performing under the National Union Policy and/or ADAMS was excused from performing under the National Union Policy.

71.     NATIONAL UNION has breached the National Union Policy by, among other things, wrongfully:

   a.     Failing or refusing to defend ADAMS in the Underlying Litigation without seeking payment for defense expenses from ADAMS;

   b.     Failing or refusing to attempt to settle the Underlying Litigation by making and/or accepting reasonable settlement offers;

   c.     Foreclosing the possibility of settlement and/or preventing settlement opportunities from arising;

   d.     Denying ADAMS the right to benefits to which ADAMS is entitled under the National Union Policy; and

   e.     Taking coverage positions contrary to controlling law.

12451083.1

72.     By breaching the National Union Policy, NATIONAL UNION waived its rights under the National Union Policy.

73.     As a direct and proximate result of NATIONAL UNION's breaches, ADAMS has been damaged in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION

**BREACH OF THE IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING (AGAINST THE INSURERS)**

74.     ADAMS realleges and incorporates by reference each and every allegation set forth above in this Complaint.

75.     The Northern Policy and the National Union Policy (collectively, "Policies") contain an implied covenant of good faith and fair dealing under which the INSURERS agreed not to take any action that would deprive ADAMS of its rights and benefits under the Policies.

76.     The INSURERS have breached this implied covenant of good faith and fair dealing by engaging in courses of conduct intentionally designed to deprive ADAMS of its rights and benefits under the Policies.

77.     The INSURERS breached the implied covenant of good faith and fair dealing by, among other things, failing or refusing to defend ADAMS in the Underlying Litigation at all or without seeking payment for defense expenses from ADAMS, failing or refusing to actively comply with their settlement-related obligations, and asserting unreasonable interpretations of the Policies with the intention of depriving ADAMS of rights and benefits due to ADAMS under the Policies.  The INSURERS' breaches of the implied covenant of good faith and fair dealing include, but are not limited to intentionally, wrongfully, and maliciously:

a.      Failing or refusing to defend ADAMS in the Underlying Action at all or without seeking payment for defense expenses from ADAMS;

b.      Failing or refusing to attempt to settle the Underlying Litigation

12451083.1

1       by making and/or accepting reasonable settlement offers;

2   c.      Foreclosing the possibility of settlement and/or preventing

3           settlement opportunities from arising;

4   d.      Knowingly misrepresenting to ADAMS pertinent facts or

5           insurance policy provisions relating to coverages at issue;

6   e.      Knowingly failing to acknowledge and act reasonably promptly

7           upon communications with respect to claims arising under the

8           Policies;

9   f.      Knowingly failing to adopt and implement reasonable standards

10          for the prompt investigation and processing of claims arising

11          under the Policies and other insurance policies;

12  g.      Knowingly failing to provide promptly a reasonable explanation

13          of the basis relied on in the Policies, in relation to the facts or

14          applicable law, for their failure to defend ADAMS in the

15          Underlying Action at all or without seeking payment for defense

16          expenses from ADAMS, and for their failure to effectuate a

17          settlement of the Underlying Action;

18  h.      Basing their claims-handling decisions on the desire to reduce or

19          avoid their obligations to ADAMS;

20  i.      Preferring their own interests over the interests of ADAMS;

21  j.      Denying ADAMS the right to benefits to which ADAMS is

22          entitled under the Policies, with the intention of coercing

23          ADAMS to forgo these rights and benefits; and

24  k.      Taking coverage positions contrary to controlling law.

25      78.     By breaching the implied covenant of good faith and fair dealing, the

26  INSURERS waived their rights under the Policies.

27      79.     As a direct and proximate result of the INSURERS' breaches of the

28  implied covenant of good faith and fair dealing, ADAMS has been damaged in an

12451083.1

1  amount to be proven at trial.

2      80.    As a direct and proximate result of INSURERS' breaches of the implied

3  covenant of good faith and fair dealing, ADAMS is entitled to recover its attorneys'

4  fees and costs incurred in establishing its rights to obtain benefits under the Policies.

5                           **EIGHTH CAUSE OF ACTION**

6     **UNFAIR BUSINESS PRACTICES (VIOLATION OF CALIFORNIA
       BUS. & PROF. CODE § 17200, ET SEQ.) (AGAINST THE INSURERS)**

7

8      81.    ADAMS realleges and incorporates by reference each and every

9  allegation set forth about in this Complaint.

10     82.    ADAMS alleges on information and belief that the INSURERS have

11 engaged in unlawful, unfair, wrongful, and/or fraudulent business practices,

12 including with respect to ADAMS's claims to the INSURERS under the Policies in

13 connection with the Underlying Litigation.  Such practices include but are not

14 limited to the acts and omissions set forth above, as well as violations of California

15 Insurance Code § 790.03(h), such as knowingly committing or performing with such

16 frequency as to indicate a general business practice the following unfair claims and

17 settlement practices:

18         a.    Misrepresenting to claimants (including ADAMS) pertinent facts
19              or insurance policy provisions relating to coverages at issue;

20         b.    Failing to acknowledge and act reasonably promptly upon
21              communications with respect to claims arising under insurance
22              policies (including the Policies);

23         c.    Failing to adopt and implement reasonable standards for the
24              prompt investigation and processing of claims arising under
25              insurance policies (including the Policies);

26         d.    Not attempting in good faith to effectuate prompt, fair, and
27              equitable settlements of claims;

28         e.    Attempting to settle a claim by an insured (including ADAMS)

- 18 -

12451083.1

for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application; and

f.    Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy (including the Policies), in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

The INSURERS' unlawful, unfair, wrongful, and/or fraudulent business practices set forth above in this paragraph and throughout this Complaint, including the fifth, sixth, and seventh causes of action, were and are unfair business practices in violation of California Business and Professions Code § 17200, et seq., and California common law.  (*See, e.g., Zhang v. Superior Court* (2013) 57 Cal.4th 364.)

83.    As a direct and proximate result of the INSURERS' unlawful, unfair, wrongful, and/or fraudulent business practices, ADAMS has suffered and will continue to suffer substantial damage and irreparable injury.  As such, ADAMS is entitled to temporary, preliminary, and permanent injunctive relief against the INSURERS and their unlawful, unfair, wrongful, and/or fraudulent business practices, as well as restitution and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, ADAMS prays for relief as follows:

1.    As to the first cause of action, a declaration that under the Northern Policy NORTHERN was and is obligated to comply with its duty to defend ADAMS in the Underlying Action;

2.    As to the second cause of action, a declaration that under the National Union Policy NATIONAL UNION was and is obligated to comply with its duty to defend ADAMS in the Underlying Action without seeking payment for defense expenses from ADAMS;

12451083.1

3.      As to the third cause of action, a declaration that under the Northern Policy NORTHERN is obligated to indemnify ADAMS in connection with the Underlying Litigation;

4.      As to the fourth cause of action, a declaration that under the National Union Policy NATIONAL UNION is obligated to indemnify ADAMS in connection with the Underlying Litigation;

5.      As to the fifth cause of action, general, consequential, and compensatory damages according to proof;

6.      As to the sixth cause of action, general, consequential, and compensatory damages according to proof;

7.      As to the seventh cause of action, attorneys' fees, costs, and consequential damages according to proof;

8.      As to the eighth cause of action, temporary, preliminary and permanent injunctive relief, as well as restitution and attorneys' fees;

9.      Pre-judgment interest according to proof;

10.     Costs of suit and attorneys' fees according to proof;

11.     Punitive damages according to proof; and

12.     Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED: June 22. 2016                     HANSON BRIDGETT LLP


By:_____/s/ Miles C. Holden_____
        MILES C. HOLDEN
        Attorneys for Plaintiffs ADAMS GROUP,
        INC. and ADAMS GRAIN CO.

12451083.1

1

## <u>**JURY DEMAND**</u>

2      ADAMS GROUP, INC. and ADAMS GRAIN CO. hereby demand a jury

3  trial.

4                                    Respectfully submitted,

5  DATED: June 22. 2016                HANSON BRIDGETT LLP

6

7                                    By:_____/s/ Miles C. Holden_____
                                         MILES C. HOLDEN
8                                        Attorneys for Plaintiffs ADAMS GROUP,
                                         INC. and ADAMS GRAIN CO.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12451083.1

- 21 -